Borden H. Mills and another, Respondents, *v.* The Michigan Central Railroad Company, Appellants.

Where goods are received by a carrier for transportation, marked for a destination beyond the terminus of such carrier's route, the notice to the next carrier of their arrival and readiness for delivery need not be actually brought home to the knowledge of such next carrier; but where the uniform custom of doing business between them was for the first carrier to deposit such notice in a special box in its own depot, to which the next carrier had constant access and was accustomed to look for notices, such deposit is sufficient. (Folger, J.)

But, in addition to the giving of notice of arrival to the carrier next in the line, a reasonable time must elapse for him to take away, and on his neglect to do so, a storage must be made, or some act, indicating a renunciation of the relation of carrier, be done by the first carrier, to relieve him from a common carrier's liability. And where the first carrier was a railroad company, and the next a propeller line on the great lakes, and it was the custom to ship the goods by the first vessel of the line that could take them after their arrival at the railroad terminus.— *Held*, that the reasonable time, which must elapse after notice, did not expire until a vessel which, in the ordinary course of business, could receive the goods, had failed to do so.

The provisions of the charter of the Michigan Central Railroad with reference to storage at its depots, and exemption from liability, except as warehousemen,—*Held*, not to affect their liability as an intermediate carrier in such a case.

(Argued April 27th, and decided May 30th, 1871.)

Appeal from the judgment of the General Term of the Supreme Court, in the third judicial district, affirming the judgment of the Special Term in favor of the plaintiff.

This action was brought to recover the value of 298 bags of wheat, which were shipped on the defendant's road at Kalamazoo, Michigan, on the 16th of October, 1865, to go to Detroit by rail, and thence to Buffalo, N. Y., by propellers on the lakes, thence to Albany, N. Y., by the New York Central railroad. The bags were consigned to Mills & McMartin, Albany, N. Y., by lake and rail, but no way bills or shipping receipts were delivered to the plaintiff's agent at Kalamazoo. The property duly arrived at Detroit, one car load on the 17th and the other on the 18th of October, where it was destroyed by fire, which burned the freight warehouses of the defendant on the evening of the last mentioned day. The defendant was accustomed to ship goods marked like these ("by lake and rail") by the New York Central propeller line, running to Buffalo, and by the first vessel that could take them, after their arrival at Detroit. It was the established usage that the agents of the several lines on the lake should receive notice of the arrival of goods consigned to go forward by their respective lines, by notices deposited in boxes designated for them, at the freight office of the defendant at Detroit. These notices were made out on the arrival of the goods. The practice was uniform and fully recognized by all the agents. The notice in this case was duly made and deposited. The property was ready to go forward on the day it was burned, but no boat was ready to take it.

The charter of the defendant was also introduced by it in evidence. Section 16 provides: "The said company may charge and collect a reasonable sum for storage upon all property which shall have been transported by them upon delivery thereof at any of their depots, and which shall have remained at any of their depots more than four days. *Provided,* that, elsewhere than at their Detroit depot the consignee shall have been notified, if known, either personally or by notice left at his place of business or residence, or by notice sent by mail, of the receipt of such property, at least four days before any storage shall be charged, and at the Detroit depot such notice shall be given twenty-four hours (Sundays excepted) before any

storage shall be charged; but such storage may be charged after the expiration of said twenty-four hours upon goods not taken away. *Provided, that in all cases, the said company shall be responsible for goods on deposit in any of their depots awaiting delivery, as warehousemen, and not as common carriers.*" The defendants also gave in evidence as a construction of this proviso, the report of *Hale* v. *Michigan Central R. R. Co.* (6 Mich., 243.)

*Amasa J. Parker*, for the appellant. On the meaning of "delivery and awaiting delivery." (Edwards on Bail., 528, 530; *Garside* v. *The Trent Nav. Co.*, 4 Term. R., 581.) On the question of notice and liability, *McDonald* v. *West. R. R. Cor.* (34 N. Y., 497, 500); *Van Santvoord* v. *St. John* (6 Hill, 157); *Thomas* v. *B. and P. R. R.* (10 Met., 472); *Norway Co.* v. *B. and M. R. R.* (1 Gray, 263); *Goold* v. *Chapin* (20 N. Y., 259); *Hempstead* v. *N. Y. C. R. R.* (28 Barb., 485); *Fisk* v. *Newton* (1 Denio, 45); Angel on Carriers, § 75; Story on Bail., § 449; Redfield on Railways, 254, § 8; Pierce on R. R. Law, 435, *et seq.;* 27 Vermont, 110; 32 N. H., 523; 22 Conn., 1. The contract having been made in Michigan, and to be performed there, must be governed by the law of that State. (2 Kent's Com., 454, 458; Story on Con. of Laws, § 76, etc.; *Waldron* v. *Ritchings*, 9 Abb., N. S., 368; *Pen. and Or. Steamship Co.* v. *Shand*, 3 Moore P. C., 272.)

*Samuel Hand* and *Matthew Hale*, for the respondent. On the question of liability, *McDonald* v. *W. R. R. Cor.* (34 N. Y., 497); *Ladue* v. *Griffith* (25 N. Y., 364); *Miller* v. *Steam Nav. Co.* (6 Seld., 431); *Goold* v. *Chapin* (20 N. Y., 259); *Blumenthal* v. *Brainerd* (38 Vermont, 413); *Moses* v. *B. R. R.* (32 N. H., 523); *Morris R. R.* v. *Ayres* (5 Dutch. [N. J.], 393); *Brentnall* v. *S. R. R. Co.* (32 Vermont, 665); *American Co.* v. *Baldwin* (26 Ill., 504); *Wood* v. *Crocker* (18 Wis., 345); *Angle* v. *Miss. R. R.* (9 Iowa, 487); *Gt. West. R. R.* v. *Crouch* (3 Hurst & Norm., 183); *Buckley* v. *Gt. Western R. R.* (18 Mich., 121); *McMullen* v. *Mich. Sou. R.*

*R.* (16 Mich., 79). Construction of the charter, *Mich. R. R. Co.* v. *Ward* (2 Mich., 539); Dwarris on Stat., 764; *Wayman* v. *Southard* (10 Wheat., 130); Laws of 1848, 442, § 2; 6 Seld., 431; 20 N. Y., 264. The *lex fori* governs. (*Bissell* v. *Northern Ind. and C. R. R.*, 22 N. Y., 260, 263; *Hyde* v. *Goodnow*, 3 Comst., 266; *Jewell* v. *Wright*, 30 N. Y., 259; *Gaur* v. *Frank*, 36 Barb., 320; *Decouche* v. *Lavetier*, 3 John. Ch., 190.) The defence of a foreign law must be pleaded to be available. (*Monroe* v. *Douglass*, 1 Seld., 447.)

FOLGER, J. Unless the defendants were relieved from their liability as common carriers by the provision in their charter to be noticed hereafter, they could only be discharged therefrom by a delivery of the wheat to the next carrier in the line of transportation, or by a notice to him that it was ready for delivery, and the lapse of a reasonable time for him to take it away, and in the event of his neglect so to do, the proper storage of the same, or by the doing of some act indicating a renunciation of the relation of carrier. (*McDonald* v. *West. Trans. Co.*, 34 N. Y., 497; *Goold* v. *Chapin*, 20 N. Y., 259.) The wheat was not actually delivered, nor is it shown that notice of its arrival was actually brought home to the next carrier in the line of transportation. Notice was given, however, according to a custom prevalent with the defendants and carriers who were used to take goods from them. This custom was to deposit a written notice of the presence of freight in a letter box appropriated to the particular carrier by whose line the freight was to go. To this box the succeeding carrier had constant access. The custom was uniform and fully recognized by all· connecting lines. But it is not shown that the plaintiffs or their agent who shipped the wheat from the initial point of carriage knew of this custom. If the plaintiffs are to be considered as contracting with a reference to this custom of the defendants and their connecting lines, then it must be held that the deposit in the proper box of the notice to the succeeding carrier was all the notice to him, which the law required of the

defendants. And the rule seems to be, in this State, that the shipper of goods, where there is no express contract, is held to have agreed with the carrier for the transportation and disposal of them in the way usual and customary with the carrier. (*St. John* v. *Van Santvoord*, 6 Hill, 157.) But there needed not only notice to the carrier next in line, of the arrival of the wheat, but a lapse of reasonable time for him to take it away, and in his neglect so to do, some disposition of it by the defendant, indicating its intention no longer to be charged as carriers of it. What shall be a reasonable time is also to be determined by the circumstances of each case. It appears, from the testimony, that this wheat was received by the defendants, to be delivered by them to a propeller of the New York Central railroad line of propellers on Lake Erie, and that, in such case, the defendant shipped the goods by the first vessel of that line which could take them after their arrival in Detroit. Here, then, was a question to be determined in their favor, before the defendant could claim that they were discharged from their liability as common carriers. And we think that, as it was the custom of the defendants to bring forward to Detroit merchandise designed to be shipped through the lake by this propeller line, and to then ship it by the first vessel of the line which could take it after its arrival, the reasonable time, which after notice to the propeller line, that line had to take away the goods, did not expire until there was a vessel, which, in the ordinary course of business, could take the goods away. The custom of the defendants should operate against them in this respect, as well as for them in respect to the giving of notice. And it is to be held that they made their contract affording this reasonable time to the shipper and the succeeding carrier, just as the shippers made their contract that notice deposited in the box should be a good notice of the arrival of the goods. There is no proof in the case, but that the wheat would have gone forward, had it not been destroyed, by the first vessel of the line of propellers which could take it. And the defendants having contracted

to take it from Kalamazoo, and so to ship it forward from Detroit, were not, from anything which appears in this case, discharged from their liability as common carriers of the wheat.   For though notice was given of its arrival, reasonable time for taking it from the custody of the defendants had not elapsed, nor had the defendants done any act of storage or otherwise which changed their relation to the plaintiffs of common carriers of the wheat.

Neither do we think that the section from the charter of the defendants, which was produced at the circuit, and to which our attention has been called, has the effect to relieve them.   The design of that section is to accord a right to the defendants, to wit, that of charging a price for the storage of goods after certain notice and after holding the goods for a certain time.   The proviso which the section contains, and which is relied upon by the defendants to limit their liability in this case, does not act independently of the rest of the section, and of itself give to the defendants another privilege, right or exemption.   It is, on the other hand, restrictive or explanatory merely of the affirmatively enacting part of the section, and limits its effect favorably to the defendants.   So that the section and proviso together do no more than declare that when goods have arrived at the warehouse of the defendants in Detroit, they may charge storage upon them, after notice of their arrival and a lapse of twenty-four hours therefrom; but the availing themselves of this right so to charge shall not continue their liability as common carriers; but that, in all cases, where they have chosen to exercise this right, they shall be held only to the liability of warehousemen for goods thus awaiting delivery.   In other words, the section was to apply only to goods which had reached their place of final destination and there awaited delivery, and not to goods on their way from the possession of the defendants to that of another connecting carrier.   The judgment should be affirmed, with costs to the respondent.

All concurring, except PECKHAM, J., who sat in the court below, judgment affirmed.