Rawson agt. Holland.

# N. Y. COMMON PLEAS.

SILAS RAWSON, EDWARD B. BULKLEY and WILLIAM L. RAWSON, appellants, agt. ALEXANDER HOLLAND, as Treasurer of the American Express Company, respondents.

*Common carriers — their liabilities — connecting lines.*

Where the buyer orders goods purchased to be sent by a particular mode of conveyance, and they are delivered to the carriers specified by him, the delivery on the part of the vendor is complete, and the title to the goods passes by the delivery from the consignor to the consignee.

. But where the shipment of the goods by the consignor is not made according to the directions of the buyer, the title remains in the consignor. And if the goods are deposited at the end of the carrier's route, notice thereof should be given to the consignor and not the consignee, where the carrier refuses to deliver them to the connecting line, which is to take them to their destination, on the ground that the liabilities of the latter are greater in extent than the exemption contained in the original contract of shipment.

Where the goods are destroyed by fire while on deposit, without the proper notice given to the consignor or owner of the refusal to deliver them to the connecting carrier, the carrier who received them is liable to the owner or consignor for the loss.

Especially is this the case where the carrier had known for several years the regulation established by the connecting line, and the carrier had been required to change its forms in consequence of it.

*General Term, March,* 1874.

*Present—Hon.* CHARLES P. DALY, *C. J.,* H. W. ROBINSON *and* R. L. LARREMORE, *JJ.*

IN March, 1866, the appellants, merchants in New York, sold to Messrs. Day & Lathrop, of Dryden, Mich., a bill of goods of the value of $320.35. The buyers ordered the goods

sent by the Grand Trunk Railway, but the plaintiffs sent them by the defendant, marked Day & Lathrop, Dryden, Mich., via. Ridgway. Ridgway was a station beyond Detroit, on the Grand Trunk Railway. This railway was a common carrier of goods for hire. The defendant carried the goods to Detroit, where they arrived on or before April 6, 1866 ; then, without delivering them or offering to deliver them, or giving notice to the next carrier, stored them and wrote to Day & Lathrop that the goods were at Detroit and kept them for fifteen days, when they were destroyed by fire. The appellants sued Day & Lathrop for the price of the goods and Day & L. defeated them, because the goods were not sent according to directions.

This cause was tried before chief justice SHEA, without a jury, and he gave judgment against the appellants.

*D. M. Porter*, counsel for plaintiffs, appellants.

I. The appellants, having sent the goods by the defendant, contrary to the orders of the purchasers, are the owners of the claim or demand sued for, as the goods still remained the plaintiffs' property (*Hills* agt. *Lynch*, 3 *Robertson*, 42 ; *Hicks* agt. *Cleveland*, 48 *New York*, 84).

This prevented performance of the contract of purchase and was a rescission (*Dubois* agt. *Delaware and Hudson Canal Co.*, 4 *Wend.*, 290 ; 2 *Parsons on Contracts*, 5th ed., page 675 ; *Hague* agt. *Porter*, 3 *Hill*, 141). The contract of purchase was an executory contract (*Kelly* agt. *Upton*, 5 *Duer*, 336). An action for the loss is maintainable by the appellants alone (2 *Greenleaf Ev.*, § 212; *Coats* agt. *Chaplin*, 3 *Ad. & El.*, 483 [*N. S.*]). The court so found.

These facts take the case out of the rule laid down in *Terry* agt. *Wheeler*, cited by respondent.

II. The Grand Trunk Railway was an intermediate carrier between Detroit and Dryden, *via* Ridgway, and "when goods are shipped and must pass through the hands of several

intermediate carriers before arriving at their place of destination, the duty of each intermediate carrier is to transport the goods safely to the end of his route, and deliver them to the next carrier on the route beyond." "An intermediate carrier in such case does not relieve himself from liability by simply unloading the goods at the end of his route and storing them in his warehouse *without delivery* or *notice to*, or *any attempt to deliver to the next carrier*" (*McDonald* agt. *Western Railroad Co.*, 34 *N. Y.*, 497 ; *Lawrence* agt. *Winona and St. Peters R. R. Co.*, 15 *Minnesota*, 390 ; *Northrop* agt. *Syracuse, &c., R. R. Co.*, 5 *Abb.* [*N. S.*], 425.) The respondent did what is here declared illegal. The case of *Mills* agt. *Mich. C. R. R. Co.* (45 *N. Y.*, 622) is an authority on this point, as the usual notice was given, in the usual way, to the next carrier, although decided against the shippers on that ground, because the carrier had done its duty.

III. The Grand Trunk Railroad Company was a common carrier, as it carried for all upon the same terms. No bill of lading or contract had to be signed by any party, but the property and advice note or bill of lading was delivered by the Grand Trunk Railroad Company to the party delivering the goods ; and by reference to the terms it will be seen the defendant and court have misinterpreted the effect of the delivery of the goods by the defendant upon the bill of lading (*which would not have bound the defendant in the least*), but also as to the effect of the terms stated in the bill of lading of the Grand Trunk road, even if operative, as they do not and could not make the defendant an insurer, nor in any wise liable.

IV. The delivery of the goods to the defendant to be carried beyond its line, authorized the defendant to deliver it to the next carrier, upon the usual terms required by such next carrier, especially as the contract had not to be signed (*Moriarty et al.* agt. *Harnden's Ex.*, 1 *Daly*, 227).

Inasmuch as the defendant was required to deliver the goods to the next carrier and procure them carried to their

Rawson agt. Holland.

destination (*McDonald* agt. *Western R. R., supra*), the defendant was authorized to make the necessary delivery, upon the usual terms, as when an agent is employed to do an act he is clothed with the authority to perform the act.

The consignee is under no obligation to give any new directions, nor to call for the goods (*Whitbeck* agt. *Holland*, 45 *N. Y.*, 13). An express company is a common carrier (*Whitbeck* agt. *Holland, supra ; Read* agt. *Spaulding*, 5 *Bosworth*, 395 ; *Belger* agt. *Dinsmore*, 34 *How.*, 421, *and authorities there cited*).

V. The carrier must not be in default ; the loss must not be occasioned by its misconduct, omission, neglect or ignorance of its own duties (*Read* agt. *Spaulding, supra ; S. C.*, 30 *N. Y.*, 630 ; *Michaels* agt. *New York Central R. R. Co.*, 30 N. Y., 564).

VI. The objections were improperly overruled, and the judgment should be reversed, with costs.

*Beardslee & Cole*, counsel for defendants, respondents.

I. A common carrier, by the mere receipt of a package marked for a point beyoned his route, only takes upon himself the responsibility of carrying the same as far as his route extends, and then delivering it according to his established usage. Any liability beyond a carrier's established route, can only be imposed by special contract (*Redfield on Railways, vol 2, p. 114, and notes ; Farmers' and Mechanics' Bank* agt. *Champ. Trans. Co. ; 16 Vermont*, 52 ; *Hempstead* agt. *N. Y. Cen. R. R.*, 28 *Barb.*, 485 ; *Van Santvoord* agt. *St. John*, 6 *Hill*, 158 ; *Jenneson* agt. *Camd. and Amb. Railway*, 4 *Am. Law Reg.*, 234).

· In this last case all the cases are reviewed, and the conclusion is reached that in this country the rule is, that when goods are delivered to a carrier marked for a particular place, but unaccompanied by any other directions for their transportation except such as might be inferred from the marks them-

selves, the carrier is only bound to transport and deliver them according to the established usage of his business, *whether that usage were known to the other party or not*.

II. It is proved in this case that the defendant's route ran only to Detroit, and that it was their invariable custom, when goods arrived there marked for Dryden *via* Ridgway, to hold same and notify consignee.

In the absence of any proof, and there is none in the case, the plaintiffs must be presumed to have contracted in accordance with the established custom of defendants (*Nelson* agt. *Hudson R. R. Co.*, 48 *N. Y.*, 498, *and cases cited, supra*).

III. The means of communication between Detroit and Dryden in April, 1866, were by teams and the Grand Trunk Railway. That road refused to receive freight unless a contract was made substantially exempting them from liability. The terms of the contract will be found in the case.

The court found that this contract would have in fact made the defendants insurers of the property after it had gone from their possession.

IV. The court finds that no contract was required to be actually signed by defendants. The case shows that defendants were obliged to sign a request addressed to the Grand Trunk Railway, that they would receive goods subject to certain terms and conditions. It further appears that defendants were cognizant of the terms of their bill of lading, and therefore would by a mere acceptance have been bound by its terms.

V. A common carrier becomes an insurer of goods, if without authority he causes them to be forwarded by a route or means of conveyance of his own choosing (*Ackley* agt. *Kellogg*, 8 *Cow.*, 223).

VI. Even if a carrier be bound to forward if the connecting carrier refuses to receive, the first carrier may terminate his liability by storing the goods, even without notice to the owner (*Johnson* agt. *N. Y. Cen. R. R. Co.*, 33 *N. Y.*, 610 ;

*Forsyth* agt. *Walker*, 9 *Barr*, 148; *Goold* agt. *Chapin*, 20 *N. Y.*, 259; *Fisk* agt. *Newton*, 1 *Denio*, 451).

Here the Grand Trunk Railway refused to receive the goods in question as common carriers. It was unnecessary to offer these particular goods to them, as they refused to receive *any goods* except on their forms.

VII. The defendants were bound to treat this particular shipment, in the absence of specific instructions, exactly the same as they did others of like character, and in case of any deviation and loss resulting they would have been liable.

VIII. Even if it be held that the first carrier, when he arrives at the end of his route, is bound to deliver to the connecting carrier, he cannot be called upon to make any extraordinary and unusual contract, continuing his liability after the goods have gone from his control.

He has no authority to make such a contract and bind the parties in interest (*Lamb* agt. *Cam. and Amb. R. R. Co.*, 46 *N. Y.*, 271).

The case of *Nelson* agt. *Hud. R. R. Co.* (48 *N. Y.*, 498) only goes so far as to hold that, where a consignor is directed to ship goods by a particular carrier, the authority is conferred upon him to make any contract that particular carrier requires. The present case does not fall under this ruling.

Here the chance was given to the consignees to control the manner of forwarding. They were notified of the facts of the case and asked to take upon themselves the responsibility of selecting a carrier. They declined to do so, and the plaintiffs now seek to visit upon defendants the consequences of this neglect and refusal of the consignees.

IX. The consignees are the presumptive owners of goods, and in this case were the proper persons to whom to give notice (*Fitz Hugh* agt. *Wiman*, 5 *Selden*, 559; *Sweet* agt. *Barney*, 23 *N. Y.*, 335).

X. Even if we admit that the consignees in this case were not the real owners of the goods, still they were the agents

Rawson agt. Holland.

of the consignors, and entitled to control the manner of delivery (*Sweet* agt. *Barney*, 23 *N. Y.*, 335).

XI. The only right remaining in the consignor, after delivery to the carrier, is that of stoppage *in transitu*. Hence in this case, the consignees, being the owners of the goods so far as the defendants were concerned, notice given to the consignees was all that could be done by the carrier. He would be bound to disregard any instructions given by the consignors.

Upon refusal of consignee to receive the goods, the carrier might be bound to observe the directions of the consignor, if he received any. Even then he would not be bound to give notice to the consignor (*Williams* agt. *Holland*, 22 *How. Pr.*, 137).

XII. The defendants did all that reasonably could be asked in the premises.

Upon the arrival of the package at Detroit they notified the consignees, stated the facts of the case and asked for authority and instructions. They could not be called upon to take upon themselves any extraordinary responsibility. The choice of a carrier lay with the consignees. They refused to choose one. The loss resulted directly from the fire, and indirectly from the fault or negligence of the consignees themselves. The consignors and consignees are agents, one for the other, and the contract or negligence of one affects equally the other (*Nelson* agt. *Hud. R. R. Co.*, 48 *N. Y.*, 498).

Even admitting that in law the defendants might have made the contract required by the Grand Trunk Railway without incurring responsibility, still it is submitted upon principle that they had a right to require the consignees to make their choice and so avoid any possible responsibility on their own part after the goods had gone from under their control.

It is a well settled-rule that, where a merchant sends for instructions, if the correspondent does not at once reply he

Rawson agt. Holland.

cannot complain of any act relative to the subject-matter done fairly and in exercise of a just discretion by the merchant. The same rule is upon principle applicable here.

XIII. The judgment should be sustained upon the grounds advanced by the court.

The judgment is clearly sustainable upon other grounds, and should be affirmed, even though this court should deem the position taken by the court below untenable; for there was a special contract in this case, and that contract is evidenced by the bill of lading, exhibit C.

XIV. The right of a carrier to limit by special contract his common-law liability is no longer an open question.

XV. The bill of lading in evidence constitutes the contract between the parties relating to the carriage of the goods in question (*Wolf* agt. *Myers*, 3 *Sand.; Dow* agt. *N. J. Steam Nav. Co.*, 1 *Kernan*, 485 ; *Magee* agt. *Camden and Amboy R. R. Co.*, 4 *Albany Law Journal*, 113 ; *Grace* agt. *Adams Express Co.*, 100 *Mass.*, 105; *Guillaume* agt. *Ham. and Am. P. Co.*, 42 *N. Y.*, 212; *Steinway* agt. *Erie R. R. Co.*, 4 *Hand*, 123 ; *Pendergast* agt. *Adams Ex. Co.*, 101 *Mass.*, 120 ; *Belqer* agt. *Dinsmore, court of appeals, unreported, decision handed to the court*).

There is no evidence whatever in this case, that the plaintiffs were ignorant of the terms and conditions of the bill of lading.

XVI. The bill of lading having been put in evidence by the plaintiffs they are bound by its terms (*Wetzell* agt. *Dinsmore, common pleas, general term,* 1871).

XVII. Under this bill of lading, the duty of defendants was simply to forward to Detroit and notify the consignees. There was no agreement to forward, and no such agreement can be added by application to a positive contract.

XVIII. The plaintiffs' own testimony shows that the title to the goods in question had passed to the consignees before delivery to defendants. The title passed when the goods were approved by the vendee and were separated from the

Rawson agt. Holland.

rest of the goods in the store. The direction to forward was something not connected with the contract of sale (*Wheeler* agt. *Terry*, 25 *N. Y.*, 520; *Olyphant* agt. *Baker*, 5 *Denio*, 379).

DALY, *C. J.*—I think the error in this case was the assumption, by the judge who tried the cause, that if the defendants had delivered the goods to the Grand Trunk Railway company, the connecting carrier, receiving from that company a bill of lading in their usual form, exempting them from liability in the event of injury to or the loss or destruction of the property by specified causes, that the defendants would have taken upon themselves the responsibility of insurers if the goods were lost or injured whilst in the custody of the Grand Trunk Railway company, by any of the causes for which that company declared in their receipt or bill of lading that they would not be responsible.

When a carrier is instructed by the consignor to send the goods beyond his own route by a route or carrier named by the consignor, and the carrier, instead of doing so, sends them by another route, and the goods are lost, he is answerable (*Ackley* agt. *Kellogg*, 8 *Cow.*, 225; *Jackson* agt. *The N. Y. Central R. R. Co.*, 33 *N. Y.*, 610); but it by no means follows that a carrier incurs a like responsibility when his own carriage is completed by delivering the goods to the connecting carrier for further transportation, because he receives a receipt or bill of lading from that carrier, and the goods are lost by causes for which that carrier declared in bill of lading he would not be responsible.

The judge has found that the Grand Trunk Railway company did not require, in the usual course of its business, any bill of lading to be signed by the defendants, nor any special contract to be made, and that no other contract was required to forward the box than such as would have resulted by the delivery of the box and contents, and by receiving a bill of lading of that railroad in terms the same as was required of

all others. This was a receipt or bill of lading declaring that the property was received to be sent by the company subject to the terms and condition stated upon the other side of the paper, which contained what was entitled "General notices and conditions of carriage," followed by a long list, nineteen in number, of stipulations of exemption from liability in the event of loss or injury, preceded by a general statement that it was understood and agreed that the company were not to be responsible in any of the cases thus specially excepted.

It was held in *Lamb* agt. *The Camden and Amboy R. R. & T. Co.* (46 *N. Y.*, 271), that the carrier to whom goods are delivered to be carried to the end of his route and then forwarded by him by the usual connecting line of transportation, is not an agent of the owner with power to bind the owner by any stipulation in respect to the further carriage of the goods not embraced in his own contract. I understand both the judge who delivered the opinion of the court of appeals in that case, GROVER, J., and the judge who dissented, PECKHAM, J., to agree that this *is* the *law*, which is affirmatory of the view taken by this court when the case was before us, and of the authorities then cited in support of it (*Same Case*, 2 *Daly, pp.* 484, 485, 490 *to* 493). Assuming this, then, to be the law, the Grand Trunk Railway could not, if the defendants had delivered to them the box for carriage, have created a special contract, binding the plaintiffs by stipulation not embraced in the contract made by the plaintiffs with the defendants by simply delivering such a receipt as the one above stated. The receipt or bill of lading given by the defendants to the plaintiffs, which will be assumed to be the contract entered into by them with the plaintiffs, does contain exemption from liability, and such exemptions will be regarded as extending to all the connecting carriers who are assumed to have contracted for the further carrying of the goods upon the same conditions as the first carrier. But the Grand Trunk Railway forms of receipt contain many more

stipulations of exemptions from liability, and if the defend-
ants had ever signed a special contract embracing these
additional stipulations it would not have been binding upon
the plaintiffs. Such I understand to be the view expressed
by Mr. justice GROVER, who delivered the opinion concurred
in by the majority of the court in *Lamb* agt. *The Camden
R. R. & T. Co. (see p.* 277); and if the defendants, as carriers,
had no power to enter into such a special contract for the
plaintiffs, none could be created by the simple delivery to
them of such a receipt. There was, then, no excuse for the
defendants not delivering the goods to the Grand Trunk Rail-
way, it being well settled that it is the duty of the carrier,
when the goods are transported to the end of his route, to
deliver them to the next connecting line or carriers, and that
his liability as carrier continues until he has discharged that
duty, or, where he cannot do so, has divested himself of his
common-law liability by storing the goods and notifying the
consignors, where, as in this case, he knows who the consignor
is (*Mills* agt. *The Michigan C. R. R. Co.,* 45 *N. Y.,* 622;
*McDonald* agt. *Western R. R. Co.,* 34 *id.,* 497; *Ladue* agt.
*Griffens,* 25 *id.,* 364; *Goold* agt. *Chapin,* 20 *id.,* 259; *Wil-
liams* agt. *Holland,* 22 *How. P. R.,* 137; *Northrup* agt.
*The Syracuse R. R. Co.,* 5 *Abb. P.* [*N. S.*], 425; *Redfield on
Carriers,* 222, § 302).

This box when received by the defendants in this city, was
marked Day & Lathrop, Dryden, Michigan, and was acknow-
ledged in the defendants' bill of lading to have been received
from the plaintiffs so marked. The defendants' route
extended only to Detroit, Michigan; Dryden was a point
beyond that. From Detroit there were two modes of for-
warding, by team or by railroad, to Ridgway, a station on
the Grand Trunk Railway about forty miles from Detroit,
Dryden being twenty-six miles from Ridgway. When the
box arrived at Detroit, the defendants did not forward it,
because the Grand Trunk Railway would not receive it except
on their forms. No request was made to them to carry the

box, nor did the defendants forward it by team. They placed it in the warehouse of the Great Western Railway, and sent a letter to the consignees at Dryden, asking them to sign the form of the Grand Trunk Railway, inclosing one of the forms in the letter, with a further request that the consignees would give them an order to sign for them for future lots, releasing them after they (the goods) were out of their possession, and to prevent future delays. They also stated in the letter that they only contracted to carry goods to Detroit, and that the Grand Trunk Railway forms made them responsible, after the goods were out of their possession.

The consignees did not sign the forms sent to them, nor reply to the letter from the defendants; but on receiving it, they sent a letter to a Mr. Smith, the agent of the Grand Trunk Railway at Ridgway, inclosing an order for the goods, which they did for the reason that Ridgway was the usual and most convenient point for them for receiving the goods, and they supposed that Smith, the agent there, would, on receiving their letter, "send and get the goods up to his station," so that they could get them with their team. In this way the box was delayed at Detroit, and fifteen days after the defendants sent the letter to the consignees, the goods were consumed in the destruction by fire of the warehouse of the Great Western Railway.

When the defendants received the box from the plaintiffs for carriage, they knew of the regulation established by the Grand Trunk Railway, for they had to change their forms in consequence of it, and the regulation had existed for eight years. If they were unwilling, without special instruction, to deliver the box to the Grand Trunk Railway under the apprehension of personal responsibility beyond their route, they should have asked for such instruction when they received the box; for even where the circumstances are such as to warrant the presumption on the part of the carrier that the consignee is the owner of the goods, the consignor, where he is, as is the case here, known to the carrier, is to be treated

as the agent of the consignee for the purpose of shipping and consigning the goods (*Nelson* agt. *The Hudson River R. R. Co.*, 48 *N. Y. R.*, 507; *Loudon, &c., Rugg* agt. *Bartlett*, 7 *H. & N.*, 400; *York Co.* agt. *Central R. R. Co.*, 3 *Wall.*, 107; *Squire* agt. *N. Y. Central R. R. Co.*, 98 *Mass.*, 239). If, therefore, the defendants would not forward the goods by the Grand Trunk Railway, which was the connecting railroad line, without special instruction, they should have so advised the consignor, he having authority to make the contract in respect to their transportation, and any contract he had entered into would have been binding upon the consignees (*York Co.* agt. *Central R. R.*, *supra*). This, according to the recent cases, is the rule where the consignor is not the owner, the property in the goods having entirely passed from him and vested in the consignee by the delivery to the carrier; but in this case the consignors were the owners. Day & Lathrop purchased the goods from the plaintiffs and instructed them to forward them by the Grand Trunk Railway. The plaintiffs delivered them to the defendants without any such instruction, and having brought an action against Day & Lathrop for the price of the goods, the plaintiffs were defeated because they did not ship the goods as Day & Lathrop had directed them to do. Day was examined as a witness upon the present trial, and testified that if the plaintiffs had obeyed his instructions, the goods would have gone through the Grand Trunk Railway to Ridgway without going to Detroit, and escaped the accident which caused the destruction.

Where the buyer orders the goods purchased to be sent by a particular mode of conveyance, and they are delivered to the carriers specified by him, the delivery on the part of the vendor is complete, and the title to the goods passes by the delivery from the consignor to the consignee. But that was not this case, and the plaintiffs, both at the time of the shipment, and when the goods were destroyed, were the owners. If the goods were not to be forwarded by the connecting railroad at Detroit without special instructions, the plaintiffs

Rawson agt. Holland.

were the persons to be advised of it, when they shipped the goods, and the defendants; in my judgment, did not divest themselves of their responsibility as carriers by placing the goods in the warehouse of the railroad depot at Detroit, and notifying the consignees by letter, who were sixty miles from Detroit, that the goods would be sent to them by the Grand Trunk Railway, if they would sign a form releasing that railroad from liabilities to a greater extent than the exemption contained in the original contract of shipment. If the defendants desired to comply with the wishes of that company, or to avoid embarrassments with it, the simpler course and the more just one to all parties, would have been to have added to their own contract a stipulation authorizing them to forward by that line, subject to the terms and conditions of that company; so that a consignor, whether the owner of the goods or acting as the agent of the consignee in the shipment of them, might exercise the right of determining whether he would send them by the defendants, as carriers, subject to such conditions or not.

For these reasons I am of the opinion that the judgment should be reversed.

I concur in liability of defendants for breach of duty as forwarders.

H. W. R.

I think defendants were liable as forwarders and that judgment should be reversed.