AYLWARD, (UNITED STATES v.) See Case No. 14,482.

AYMAR, (UNITED STATES v.) See Case No. 14,483.

## Case No. 689.

### AYRES v. WESTERN R. CORP.

[14 Blatchf. 9.][1]

Circuit Court, S. D. New York. Oct. 19, 1876.

CARRIERS—LIABILITY AS WAREHOUSEMEN—NOTICE TO CONSIGNEE OF ARRIVAL OF GOODS.

Goods, in the course of transportation from West Springfield, Massachusetts, to Cleveland, Ohio, were destroyed by fire in the depot of the Western Railroad Corporation, at East Albany, New York. That corporation, when it received the goods at West Springfield, gave a receipt, setting forth that it had received 4 cases, marked J. B. C., Cleveland, Ohio. The receipt, on its face, said: "This contract, and the responsibility of the parties hereto. being limited and controlled by the rules and regulations printed upon the back of this receipt;" "it being also understood, that this corporation assumes no liability beyond the end of its own line, and that, so far as it acts as agent for other parties participating in the joint transit aforesaid, said parties are separately liable." The back of the receipt said: "The following rules and regulations have been adopted by the several railroad corporations in regard to freight." "The company will not hold itself liable as common carriers, for articles of freight, after their arrival at their place of destination and unloading at the company's warehouse or depots." "All articles of freight must be taken away within 24 hours after being unladen from the cars." The cases were marked as described in the receipt, and also marked, "care of Western Transportation Co.," a corporation engaged in carrying freight on the Erie canal. The terminus of the road of the Western Railroad Corporation was at East Albany. The goods arrived there and

[1] [Reported by Hon. Samuel Blatchford, Circuit Judge. and here reprinted by permission.]

were unladen at its warehouse. Three days afterwards the warehouse took fire, and the goods were consumed, without fault on the part of the corporation. It did not appear that notice of the arrival of the goods was given by the corporation to the Western Transportation Company: *Held*, that the Western Railroad Corporation was liable for the value of the goods.

[Cited in Wertheimer v. Pennsylvania R. Co., 1 Fed. 233; Rackett v. Stickney, 27 Fed. 879; The Brantford City, 29 Fed. 394.]

[At law. Action by John B. Ayres against the Western Railroad Corporation for the value of goods destroyed by fire while stored in defendant's warehouse. Judgment for plaintiff.]

George Bliss, for plaintiff.
George W. Miller, for defendant.

WALLACE, District Judge. The plaintiff seeks to recover the value of certain paper destroyed by fire in the freight depot of the defendant, while in course of· transportation from West Springfield, Massachusetts, to Cleveland, Ohio, and other points beyond the terminus of the defendant's road. Upon the shipment of the goods, the defendant gave the shipper a receipt in the following terms: "Western Railroad Corporation, West Springfield, June 26th, 1861. Received of Southworth Mf'g Co., 10 cases paper, marked and numbered—4, J. B. Cobb & Co., Cleveland, Ohio—5, J. R. Dayton, Quincy, Ill.—1, Ogden, Brownell & Co., Keokuk, Iowa; contents and value unknown; to be transported to ........, and delivered at the ...........·.. depot there, to ........, on the payment of freight therefor, together with· such expenses as shall be shown by vouchers to have been advanced on the same; this contract and the responsibility of· the parties hereto being limited and controlled by the rules and regulations printed upon the back of this receipt, as also by the terms of their printed tariffs of freight; and it being, also, understood, that this corporation assumes no liability beyond the end of its own line, and that, so far as it acts as agent for other parties, participating in the joint transit aforesaid, said parties are separately liable." Upon the back of the receipt there was an endorsement: "The following rules and regulations have been adopted by the several railroad corporations in regard to freight." Then follow a number of rules, among which are these: "The company will not hold itself liable, as common carriers, for articles of freight, after their arrival at their place of destination and unloading at the company's warehouse or depots." "All articles of freight must be taken away within twenty-four hours after being unladen from the cars, the company reserving the right of charging storage on the same, or placing the same in store at the risk and expense of the owner, if they see fit, after a lapse of time." The several parcels of goods were marked as described

in the receipt, and. also marked "care of Western Transportation Co.," a corporation engaged in carrying freight upon the Erie canal. The terminus of the defendant's road was at East Albany, where the goods arrived· and were unladen at the defendant's warehouse on the 2d of July; and, on the 5th of July, the warehouse took fire and the goods were consumed, without fault on the part of the defendant. It is not shown that notice of the arrival of the goods was given by the defendant to the Western Transportation Company, but it does appear, that, according to the usual course of business, an agent of the latter visited the warehouse of the defendant, to look for goods, prior to the 5th of July.

Giving effect to the receipt delivered by the defendant to the shipper, as a special contract, which restricts the common-law liability of the defendant as a carrier, and renders it liable only according to the conditions mentioned upon the face and back of the receipt, the defendant was liable as a carrier for the goods destroyed in its warehouse, while in course of transportation. The goods were to be transported by the defendant to its depot, for the purpose of de-· livery there to a second carrier, in the course of transportation to the ultimate destination of the goods; and, in such case, · the carrier is liable as a carrier while the goods are in its warehouse awaiting delivery to the second carrier, unless it is absolved by notice of their arrival to the second carrier, or by the terms of a special contract with the shipper. Condit v. Grand Trunk Ry. Co., 54 N. Y. 500; Railroad Co. v. Manufacturing Co., 16 Wall. [83 U. S.] 318; Mills v. Michigan Cent. R. Co., 45 N. Y. 622; McDonald v. Western R. Co., 34 N. Y.· 497; Rawson v. Holland, 59 N. Y. 611. It is not claimed that the defendant had become exonerated ·from liability by giving notice of the arrival of the goods to the second carrier, but it is insisted that it is exempted because of the condition on the back of the receipt, which reads, that it will not hold itself liable as a common carrier, for such articles, "after their arrival at their place of destination and unloading at the company's warehouse or depots." The argument for the defendant is, that the place of destination, within the language of the condition, is that point on the defendant's road where it is to deliver the goods to some other carrier or to the consignee. If this. position is sound, doubtless, the defendant was liable only as a warehouseman, and, as the goods were destroyed without fault on its part, is not liable for them. To sustain this position it is necessary to maintain, that, when goods are addressed to a point beyond the line of the first carrier, consigned to the care of a connecting carrier, their place of destination is that place where the first carrier is to deliver them to the second carrier. Such a conclusion is opposed to

the plain and ordinary meaning of language. The goods were shipped to Cleveland and other points further west, and the packages were marked, "care of Western Transportation Company." So far as the defendant was concerned, its duty would have been discharged by delivering the goods to the Western Transportation Company, but it does not follow from this that the Western Transportation Company was the place of destination. So to hold would require the rest of the address to be disregarded. The place of destination is the place designated for the ultimate unlading of the goods, and is that point on the defendant's road, or on that of any connecting carrier, at which the consignee is to receive the goods according to the usual course of business of the carrier. Looking at the various terms of the receipt, it is apparent, that the receipt is designed to modify the liability not only of the defendant, but of the various connecting carriers who participate with it in the transportation; and, while some of the conditions are adapted to protect the defendant, many of them are inserted for the protection of the connecting carriers. It is framed to cover shipments for places on the defendant's line, and also for shipments to distant places upon or beyond the lines of connecting carriers who are to participate with the defendant in the transportation of the goods, and for whom the defendant is to act as agent in the transaction. Upon its face, the receipt provides that the defendant shall assume no liability beyond the end of its own line, and that "the parties participating in the joint transit" are to be separately liable, while the conditions upon the back of the receipt consist of "rules adopted by the several railroad corporations in regard to freight." It is framed to stand for a contract between the shipper and the defendant, and also for one between the shipper and the connecting roads who participate in the joint transit, so that both the defendant and the connecting carriers may find protection in the several conditions. This being the object in view, the meaning of the term in question seems obvious. It is used in two of the conditions only, one of which provides against liability for articles of freight "after their arrival at their place of destination and unloading at the company's warehouse," and the other that such articles "arriving at their place of destination must be taken away within twenty-four hours after being unladen." The place of destination is the ultimate destination of the goods. When this is on the defendant's road, unless the goods are taken away within twenty-four hours after their arrival and unloading, the defendant is liable only as warehouseman; when the place is upon the road of a connecting carrier, such carrier, after the twenty-four hours, ceases to be liable as carrier, and assumes only the liability of a warehouseman. This construction is consistent with the instrument as a whole, with the relations of the various parties to it, and with the nature of the transaction the receipt is intended to provide for. If the meaning of the conditions were doubtful, the construction to be given them should be one most strongly against the carrier. The conditions are designed to relax the common-law liability of the carrier—a liability which the shipper has a right to insist upon, and of which he is not to be deprived without clear evidence of his assent. If the meaning of such conditions is involved in any doubt, the doubt is to be resolved in his favor. The conditions in question are satisfied by the construction which has thus been placed upon them. These conclusions lead to a decision against the defendant.

But, if it should be conceded that the conditions upon the back of the receipt are so expressed as to refer to the warehouse of the defendant, and relieve the defendant from the obligations of a carrier after the arrival of the goods there, the same result must follow, because of the controlling authority here of the case of Railroad Co. v. Manufacturing Co., 16 Wall. [83 U. S.] 318. It is there held, that the delivery by the carrier to the shipper, of a shipping receipt, which, upon its face, refers to conditions on the back, defining the terms of the carrier's responsibility, and its acceptance by the shipper, does not constitute a special contract between the shipper and the carrier, by which the liability of the latter is limited by the conditions on the back of the receipt. It is unnecessary to refer to or discuss the principles or the authorities which bear upon the doctrine thus held. The case, in effect, decides, that no act on the part of the shipper, short of an explicit agreement, will imply an assent on his part to a contract proposed by a carrier, modifying the liability of the latter. That this conclusion conflicts with many decisions of high authority in this country and England, must be conceded; but the case furnishes a rule of plain and certain application, and sweeps away many fine and artificial distinctions which have involved in confusion the whole doctrine of notices and special contracts, as affecting the rights and liabilities of common carriers. Some of these cases have turned upon the point, whether the conditions in a printed receipt were in small type or in large, and whether the receipt was taken deliberately or hurriedly, while one case in the court of last resort in this state places controlling emphasis upon the fact that the receipt was taken by the shipper in a dimly-lighted car, and holds that it was, therefore, not a contract. Blossom v. Dodd, 43 N. Y. 264. Another case of the supreme court of the same state holds the receipt a contract, although taken by a foreigner ignorant of the language in which it was printed, and to whom no explanation of its terms

was vouchsafed. Fibel v. Livingston, 64 Barb. 179. See, also, Warhus v. Bowery Sav. Bank, 21 N. Y. 543. Thus, while one man is absolved from obligation because it may be inconvenient for him to inform himself of the terms of the proposed contract, another is held. The theory, of course, is, that assent to the proposed contract is or is not implied from the circumstances of the transaction, but the cases illustrate the utter uncertainty of the test of assent, when one man who is ignorant of the language of the proposed contract is presumed to assent, while another is absolved because, from the type in which it is printed, or the light by which he is to read it, he cannot acquaint himself with its terms without more or less inconvenience. The rule held by the supreme court of the United States is capable of certain and easy application, and, if adhered to, will go far to abrogate a class of contracts to which practically the carrier is the only party.

Judgment is ordered for the plaintiff.